IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:20-CV-147

| | |
|---|---|
| MAACO FRANCHISOR SPV, LCC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) **VERIFIED COMPLAINT** |
| | ) |
| GREGG A. SADWICK and GREBA CORPORATION, | ) |
| | ) |
| Defendants. | ) |

Plaintiff, for its Verified Complaint against Defendants, alleges and says as follows:

## THE PARTIES

1. Plaintiff, Maaco Franchisor SPV, LLC ("Maaco") is a limited liability company organized and existing under the laws of the State of Delaware, with its offices and principal place of business located at 440 South Church Street, Suite 700, Charlotte, Mecklenburg County, North Carolina.

2. Upon information and belief, Defendant Gregg A. Sadwick ("Sadwick" is a citizen and resident of the State of New York.

3. Upon information and belief, Defendant Greba Corporation is a New York corporation, with its principal office at 268 Ida Red Lane, Rochester, New York and is owned and controlled by Defendant Gregg A. Sadwick.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over the subject matter of this action under and by virtue of 28 U.S.C. § 1331, in that this is an action arising under the laws of the United States.

5. This Court also has jurisdiction over the subject matter of this action under and by virtue of 15 U.S.C. § 1121 and 28 U.S.C. § 1338(a), in that this is an action arising under an Act of Congress relating to trademarks.

6. This Court also has jurisdiction over the subject matter of this action under and by virtue of 28 U.S.C. § 1338(b) in that this action presents one or more claims of unfair competition that are joined with one or more substantial and related claims under the trademark laws.

7. This Court also has supplemental jurisdiction over the subject matter of the First and Third Claims for Relief asserted in this Verified Complaint under and by virtue of 28 U.S.C. § 1367 and the case law decided thereunder.

8. Venue of this action in this judicial district and division is proper under and by virtue of 28 U.S.C. § 1391(b)(2), in that, among other things, a substantial part of the events or omissions giving rise to the claims in this action occurred in this judicial district and division. Venue is also appropriate in this judicial district and division because Defendants contractually consented to this venue in the Franchise Agreement they entered into with Maaco.

9. This Court has *in personam* jurisdiction over Defendants under and by virtue of Rule 4(k)(1)(A) of the Federal Rules of Civil Procedure and North Carolina's "long arm" statute, N.C. Gen. Stat. § 1-75.4. Additionally, this Court has personal jurisdiction over Defendants because they consented to such jurisdiction in the Franchise Agreement they entered into with Maaco.

## **GENERAL ALLEGATIONS**

### **The Nature of Maaco's Business**

10. Maaco grants franchises to qualified persons to establish and operate automotive repair centers under a standard, unique, and uniform system developed by Maaco, and grants to

those persons the right to use Maaco's federally-registered trade name, logo. and other proprietary marks.

## **Maaco Trade Name, Logo, and Service Marks**

11. Maaco is the owner of the trade name "Maaco" and various service marks. The Maaco name and all of its marks and logos are registered with the United States Patent and Trademark Office.

12. Among other trademarks, Maaco owns the marks and, as applicable, related logos "Maaco Collision Repair & Auto Painting," "Maaco Auto Painting and Bodyworks," and "America's Bodyshop" which are registered with the United States Patent and Trademark Office – No. 3,006,015, No. 1,050,442 and No. 2,787,733, respectively. Maaco and its franchisees have continuously used and advertised Maaco's trademarks throughout the United States and its Territories. Maaco's trademarks, trade dress, logos, and distinctive color scheme strongly distinguish its franchises from similar businesses and are widely known and recognized by consumers.

13. All of Maaco's proprietary names, logos, and marks remain in full force and effect, unrevoked and uncancelled. Maaco has given notice to the public that its name, logo, and marks are registered with the United States Patent and Trademark Office by displaying with the name, logo, and marks the letter "R" enclosed within a circle.

14. Since 1972, hundreds of millions of dollars have been spent to advertise the Maaco name, logo, and marks.

15. As a result, the Maaco name, logo, and marks have become famous, and are strongly associated in the minds of the consuming public throughout the United States and its

Territories with the products and services offered by Maaco and its franchised chain of independent automotive repair centers.

16. The Maaco name, logo, and marks have acquired secondary meaning, enjoy an excellent reputation among the consuming public and constitute property of the greatest value to Maaco.

17. No goods or services bearing the name "Maaco" were manufactured, distributed, or sold to the general public prior to the first use by Maaco and its predecessors in interest.

18. More particularly, since 1972, all goods and services lawfully manufactured, distributed or sold in the United States under the Maaco name, logo, and marks have been manufactured, distributed, or sold pursuant to licenses granted by Maaco.

19. Each licensee who so manufactured, distributed or sold such goods and services promised and agreed as a condition of the license to strict control and approval by Maaco over the quality of the goods and services offered by the licensee, as well as the quality of advertising in connection with those goods and services.

## The Franchise Agreement

20. The relationship between Maaco and its franchisees is governed by the terms of the franchise and trademark agreements entered into between them.

21. On or about July 26, 2016, Maaco entered into a Franchise Agreement with Defendant Gregg A. Sadwick which granted him the right to operate a Maaco Center located at 1525 E. Henrietta Road in Rochester, New York, identified as Center M2794. A true and correct copy of the Franchise Agreement is attached hereto as **Exhibit 1** and is incorporated by reference as if fully set forth herein.

22. On or about April 24, 2017, Maaco entered into an Assignment and Assumption Agreement (the "Assignment Agreement") with Defendants Sadwick and Greba Corporation which assigned and transferred over to Defendant Greba Corporation all of Defendant Sadwick's rights, title, and interest in and to the Franchise Agreement. A true and correct copy of the Assignment Agreement is attached hereto as **Exhibit 2** and is incorporated by reference as is fully set forth herein.

23. Under the Assignment Agreement, Defendant Greba Corporation assumes all of Defendant Sadwick's obligations, agreements, commitments, duties, and liabilities under the Franchise Agreement. However, Defendant Sadwick remains responsible and guarantees the performance of Defendant Greba Corporation of all of its obligations, commitments, duties, and liabilities under the Franchise Agreement.

24. Pursuant to the Franchise Agreement, Defendants became authorized: (i) to operate an automotive repair center under the trade name "Maaco" under the Maaco system; (ii) to display the Maaco name, logo, and marks; (iii) to receive training and access to Maaco's methods, procedures, and techniques; and (iv) to participate in an established network of licensed automotive repair centers, with a product and service for which Maaco has created substantial demand through the maintenance of the highest quality standards and extensive advertising.

25. Pursuant to the Franchise Agreement, Defendants agreed, among other things, to: (i) pay Maaco on a weekly basis a franchise fee, or royalty, in an amount equal to four percent (4%) of the center's gross receipts for the first full six (6) months and nine percent (9%) of the gross receipts of the center during the balance of the term of the Agreement (Exhibit 1 at Article 5(A)(4)); and (ii) furnish Maaco with accurate weekly business reports of the center's gross revenues (Exhibit 1 at Article 5).

26.     Pursuant to Article 25(B) of the Franchise Agreement, the franchisee consents to the entry of injunctive relief and Maaco may obtain preliminary relief in the form of a preliminary injunction of the type sought in this Verified Complaint.

**Defendants' Breach of the Franchise Agreement**

27.     During the term of the Franchise Agreement, Defendants breached their obligations and promises under, among other things, Articles 5, 7, and 18 of the Franchise Agreement by (i) ceasing to operate a Maaco franchise at the franchise location; (ii) failing to pay the required royalties and advertising fees; and (iii) operating a competing business at the franchise location.

**Maaco's Termination of Defendants' Franchise Agreement**

28.     Defendants failed to cure their defaults. Accordingly, on December 24, 2019 Maaco sent Defendants a Notice of Termination informing them that their license for Center M2794 was terminated effective immediately. A true and accurate copy of the Notice of Termination is attached hereto as **Exhibit 3** and incorporated herein by reference.

**Defendants' Post-Termination Violations**

29.     In Article 18 of the Franchise Agreement, Defendants agreed, among other things, that upon termination of the Franchise Agreement and for a period of one (1) year from the date of compliance they would not:

> "Own, maintain, engage in, be employed by, finance or make loans to, advise, assist, or have any interest in or relationship or association with any business providing, in whole or in part, motor vehicle painting or body repair services or products at the premises of the Center or within a radius of ten (10) miles of the Center or of any other Maaco Center or MAACO location (including MAACO retail stores)."

30.     This covenant not to compete is reasonably necessary to allow Maaco the opportunity to re-establish its presence in the particular market and to re-capture the goodwill lost

by Defendants' ceasing to operate an authorized Maaco Center, to protect other Maaco franchisees from unfair competition by Defendants, and to protect the integrity of the entire Maaco system.

31. Notwithstanding Defendants' termination as Maaco franchisees for Center M2794, Defendants continue to operate a competing business from the premises of former Center M2794 utilizing the telephone number ending -4880 that has been advertised extensively in conjunction with the Maaco name.

32. At Center M2794, Defendants continue to offer the same services they offered when they were an authorized Maaco franchise. By continuing to operate with the telephone number associated with the Maaco marks, Defendants are unfairly competing with Maaco and causing customer confusion as to the origin of the services being offered at this location.

### The Irreparable Harm Being Caused to Maaco by Defendants' Violations of the Post-Termination Covenant Not to Compete

33. Defendants were trained in and given access to Maaco's Confidential Information and are likely using the same in the operation of their automotive repair business location at the site of former Center M2794

34. During their term as franchisees for Center M2794, Defendants obtained or have access to detailed knowledge of the Maaco system including, but not limited to, training manuals, policy manuals, operations manuals, sales promotion aids, business forms, accounting procedures, marketing reports, informational bulletins, product developments, suppliers' discounts, and inventory systems. Maaco has expended considerable time, effort, and resources training Defendants in the operation of the Maaco Center using the Maaco system. Defendants have been given access to detailed knowledge of the Maaco system, including knowledge of pricing proforma, operating procedures, marketing methods, and financial data used in the operation of a Maaco Center.

35. In Article 11 of their Franchise Agreement, Defendants agreed they would not reveal any proprietary Maaco information or use such proprietary information in connection with any business or venture in which they have a direct or indirect interest. They further recognized in Article 11 that the Maaco system, in its entirety, constitutes proprietary information including, but not limited to, training manuals, policy manuals, operations manuals, sales promotion aides, business forms, accounting procedures, marketing reports, informational bulletins, product development, suppliers' discounts, and inventory systems. It is a practical certainty that Defendants are using such information in the conduct of their new business.

36. When Maaco loses a franchise center in a particular market, Maaco seeks to open a replacement Maaco center in order to retain its goodwill and developed market share in the particular market. When a former franchisee is allowed to violate the covenant not to compete, such as Defendants here, Maaco's attempts to re-develop the market are severely hampered because of the former franchisee's continued operation utilizing the knowledge and training gained in the relationship with Maaco and palming off of the goodwill developed as a Maaco center. One of the purposes of the one-year covenant against competition is to assist Maaco in its development of a replacement Maaco center.

37. No amount of money damages alone could compensate Maaco for the loss of valuable goodwill that Maaco has suffered, and will continue to suffer, with its other licensees and with the franchise-buying public in general as a result of Defendants' unauthorized conduct.

38. The harm that would result to Defendants from an Order of this Court directing them to cease the above-described breaches of the post-termination provision of their Franchise Agreement and to cease engaging in the above-described acts of unfair competition is not sufficient

8
Case 3:20-cv-00147-GCM     Document 1     Filed 03/06/20     Page 8 of 16

to justify permitting them to continue to irreparably harm the rights and interests of Maaco and its existing franchisees.

### The Irreparable Harm Being Caused to Maaco by Defendants' Infringement Upon the Maaco Telephone Numbers and Proprietary Systems

39. Defendants' on-going use of Maaco telephone numbers and proprietary systems is likely to cause confusion among the consuming public as to the source of origin of the goods and services offered by Defendants' center and a loss of valuable goodwill to Maaco.

40. Defendants continue to utilize the telephone number ending -4880 that has been extensively advertised in connection with Maaco's marks.

41. Because Defendants continue to utilize the Maaco telephone numbers and operate from the exact same location as is listed in the Yellow Pages as their former Maaco center, it is likely that customers will blame Maaco for any problems that they experience as a result of Defendants' work on their automobiles, even though Maaco, in fact, has no control whatsoever over the quality of the products or services now being sold by Defendants to such customers.

42. In addition, it is likely that customers will look to Maaco under what they believe is Maaco's warranty for any poor work performed by Defendants' competitive business on their automobiles, and for any damage done to their automobiles by Defendants' competitive business, despite the fact that Maaco has no control whatsoever over the quality of the products or services now being sold by Defendants' center to such customers.

43. Because Defendants are no longer subject to Maaco's uniform procedures, techniques, and quality control standards, Maaco will suffer a loss of goodwill with customers in the Rochester, New York area who are being, or have been, or may be victimized by Defendants' business practices.

44. It is likely that it will be impossible, as a practical matter, for Maaco to re-establish its former good reputation with lost customers who have been victimized by Defendants once those customers have switched to other automobile repair facilities.

45. In addition to the irreparable harm now being caused to Maaco by Defendants' wrongful conduct, Maaco owes a duty to franchisees throughout the United States and parts of Canada to protect them from this public deception and unfair competition by former franchisees who continue to use the Maaco marks and systems without paying for that valuable privilege.

46. No amount of monetary damages alone could compensate Maaco for the loss of valuable goodwill that Maaco has suffered, and will continue to suffer, with its innocent franchisees and with the franchise-buying public in general as a result of Defendants' deception and unfair competition.

47. The harm that would result to Defendants from an Order of this Court directing Defendants to cease the above-described breaches of the post-termination provisions of the Franchise Agreement, and to cease infringing Maaco's marks and proprietary systems, is not sufficient to justify permitting Defendants to continue to deceive and confuse the consuming public generally, and to irreparably harm the resale rights and interests of Maaco and its existing franchisees.

**FIRST CLAIM FOR RELIEF**
**(Breach of Contract)**

48. Maaco repeats and re-alleges Paragraphs 1 through 47 above, which are incorporated by reference herein.

49. Maaco has performed all of the obligations required of it under the Franchise Agreement with regard to Center M2794.

50. Despite Maaco's performance, Defendants are in breach of the non-compete covenant contained in Article 18 of the Franchise Agreement by reason of their continued operation of an automotive repair business at exactly the same location as their former authorized Maaco Center M2794.

51. Defendants also breached Article 5 of the Franchise Agreement by ceasing to operate a Maaco franchise at Center M2794.

52. Defendants also breached Article 7 of the Franchise Agreement by failing to pay the required royalties and advertising fees.

53. Maaco is entitled to the advertising, royalties, and franchising fees which Defendants' owed prior to the termination of the Franchise Agreement on December 24, 2019, totaling $15,346.00.

54. Maaco is further entitled to a Preliminary Injunction directing Defendants, and any person or entity acting in concert with Defendants, for a period of one (1) year from the date of compliance not to: "Own, maintain, engage in, be employed by, finance or make loans to, advise, assist, or have any interest in or relationship or association with any business providing, in whole or in part, motor vehicle painting or body repair services or products at the premises of the Center or within a radius of ten (10) miles of the Center or of any other Maaco Center or MAACO location (including MAACO retail stores)."

## SECOND CLAIM FOR RELIEF
### (Trademark Infringement)

55. Maaco repeats and re-alleges herein Paragraphs 1 through 54 above, which are incorporated by reference herein.

56. Since their termination by Maaco, Defendants have deliberately and intentionally used Maaco's extensively advertised telephone numbers and proprietary systems in interstate

commerce without Maaco's permission or authority, and are continuing to do so now, despite of and in open defiance of Maaco's demands that they cease such unlawful activity.

57. The nature and extent of Defendants' wrongful and unauthorized use of Maaco's telephone numbers and proprietary systems is such that Defendants' conduct is likely to cause actual confusion, mistake, and deception among the consuming public.

58. Defendants' unauthorized use of Maaco's telephone numbers and proprietary systems constitutes trademark infringement in violation of, among other things, § 43(a) of the Lanham Act, 15 U.S.C. § 1114(1)(a).

59. As a direct and proximate result of Defendants' acts of trademark infringement, Maaco has suffered actual pecuniary losses in an amount to be proven at trial.

60. In addition, unless Defendants are restrained and enjoined from continuing to infringe Maaco's federally registered marks, Defendants' unlawful conduct will seriously erode and damage Maaco's valuable goodwill, commercial reputation, name, logo, and marks and will continue to cause confusion, mistake, and deception among the consuming public, including particularly those persons seeking authorized Maaco products and services, thus causing Maaco to suffer irreparable harm, for which there is no fully adequate legal remedy.

61. By reason of the foregoing, Maaco is entitled to a Preliminary Injunction against Defendants, and any person or entity acting in concert with Defendants, restraining and enjoining them from any further use of Maaco's trade name, logo, marks, advertising, telephone listing, forms, manuals, products, computer software, merchandise, and all other things and materials of any kind which are identified or associated in the mind of the consuming public with Maaco.

62. More particularly, in accordance with 15 U.S.C. §§ 116 and 118, Maaco is entitled to a Preliminary Injunction directing Defendants, and any person or entity acting in concert with

12
Case 3:20-cv-00147-GCM     Document 1     Filed 03/06/20     Page 12 of 16

Defendants, to: (i) release or transfer to Maaco the telephone number ending -4880 that has been advertised in connection with Maaco marks by doing everything required by the telephone company, including the signing of any release forms or payment of any outstanding telephone bills, to release or transfer the telephone numbers to Maaco; and (ii) cease using and/or remove and/or have removed any names, marks, signs, forms, advertising, manuals, computer software, supplies, products, merchandise, and all other things and materials of any kind which are identified or associated with the Maaco name, logo, marks, or trade dress, or which contain a name, logo, or mark confusingly similar to the Maaco name, logo, marks, or trade dress.

63. In addition to the injunctive relief prayed for in the preceding paragraph, Maaco is entitled to a judgement against Defendants, pursuant to 15 U.S.C. §§ 1117(a) and (b) in the amount of Defendants' profits and/or Maaco's damages, since their termination as Maaco franchisees.

64. In accordance with 15 U.S.C. § 1117(a), the amount of Defendants' profits is measured by Defendants' total sales since their termination as Maaco franchisees.

65. Accordingly, by reason of Defendants' acts of trademark infringement, Maaco is seeking a judgment against Defendants, pursuant to 15 U.S.C. §§ 1117(a) and (b), in an amount to be determined at trial, plus the costs of this action, as authorized by 15 U.S.C. §§ 1117(a) and (b).

WHEREFORE, Maaco respectfully prays the Court for the following relief:

1. That the Court treat this Verified Complaint and the Exhibits attached to it as an Affidavit in support of Maaco's Motion for a Preliminary Injunction;

2. That the Court enter a Preliminary Injunction against Defendants, and any person or entity acting in concert with Defendants, in accordance with Maaco's First Claim for Relief, directing Defendants, their agents, servants, employees, and attorneys, and all persons in active concert or participation with them who receive actual notice of said Preliminary Injunction, by

personal service or otherwise, to not, for a period of one (1) year from the date they begin compliance with such covenant not to compete from: "[o]wn, maintain, engage in, be employed by, finance or make loans to, advise, assist, or have any interest in or relationship or association with any business providing, in whole or in part, motor vehicle painting or body repair services or products at the premises of the Center or within a radius of ten (10) miles of the Center or of any other Maaco Center or MAACO location (including MAACO retail stores);"

3. That the Court enter a Preliminary Injunction against Defendants, and any person or entity acting in concert with Defendants, in accordance with Maaco's Second Claim for Relief, directing Defendants, their agents, servants, employees, and attorneys, and all persons in active concert or participantion with them who receive actual notice of said Preliminary Injunction, by personal service or otherwise, to: (i) release or transfer to Maaco the telephone number ending -4880 that has been advertised in connection with Maaco by doing everything required by the telephone company, including the signing of any release forms or payment of any outstanding telephone bills, to release or transfer the telephone numbers to Maaco; and (ii) cease using and/or remove and/or have removed any names, marks, signs, forms, advertising, manuals, computer software, supplies, products, merchandise, and all other things and materials of any kind which are identified or associated with the Maaco name, logo, marks, or trade dress, or which contain a name, logo, mark, or trade dress confusingly similar to the Maaco name, logo, marks, or trade dress.

4. That the Court award Maaco compensatory damages from Defendants in an amount to be proven at trial;

5. That the Court award Maaco its reasonable attorneys' fees and costs incurred in this action to the fullest extent permitted by law; and

6. That the Court award Maaco any and all such other and further relief as the Court may deem just and proper.

This the 6th day of March, 2020.

Respectfully submitted,

MOORE & VAN ALLEN PLLC

/s/Benjamin E. Shook
Benjamin E. Shook, N.C. State Bar No. 44793
Matille Gibbons, N.C. State Bar No. 54834
MOORE & VAN ALLEN PLLC
100 North Tryon Street, Suite 4700
Charlotte, North Carolina 28202-4003
Telephone: (704) 331-1000
Facsimile: (704) 331-1159
benshook@mvalaw.com
mattiegibbons@mvalaw.com

## VERIFICATION

I, Christopher Dawson, pursuant to the requirements of 28 U.S.C. § 1746, being first duly sworn, depose and say that I am a duly authorized representative of Plaintiff Maaco Franchisor SPV, LLC, that I have read the foregoing Verified Complaint and Motion for a Preliminary Injunction and know the contents thereof, and that the allegations contained therein are true and correct to the best of my knowledge, except as to those matters and things alleged upon information and belief, and, as to those things, I believe them to be true.

*[signature]*

Christopher Dawson, President
Maaco Franchisor SPV, LLC

Mecklenburg County
North Carolina
Signed and sworn to before me this
4 day of March, 2020

*[signature]* Tammy E. Mitchell
Notary Public for North Carolina
My commission expires: October 21, 2023

TAMMY E. MITCHELL
NOTARY PUBLIC
Mecklenburg County, North Carolina
My Commission Expires October 21, 2023