IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:20-CV-147

MAACO FRANCHISOR SPV, LLC,          )
                                    )
                Plaintiff,          )
v.                                  )
                                    )
GREGG A. SADWICK and GREBA          )        **ORDER GRANTING PLAINTIFF'S**
CORPORATION,                        )        **MOTION FOR PRELIMINARY**
                                    )               **INJUNCTION**
                Defendants.         )
                                    )
                                    )
_____      )

THIS MATER came before the Court on Plaintiff's Motion for Preliminary Injunction (the "Motion") filed March 6, 2020. Defendants have not responded, and thus the Motion is unopposed. The Court having reviewed and considered the Motion, Verified Complaint, declarations, exhibits, arguments of counsel, and applicable law, finds that Plaintiff is entitled to a preliminary injunction and GRANTS the Motion.

**<u>Findings of Fact</u>**

1.      Plaintiff Maaco Franchisor SPV, LLC ("Plaintiff" or "Maaco") is a franchisor operating and granting franchises for automotive repair centers throughout North America offering motor vehicle painting or body repair services and products.

2.      Pursuant to the Franchise Agreement dated July 26, 2016, attached as <u>Exhibit 1</u> to Plaintiff's Complaint, Defendant Gregg A. Sadwick ("Sadwick") formerly operated an authorized Maaco franchise located at 1525 E. Henrietta Road, Rochester, New York (the "Franchise Location"). On or about April 24, 2017, Maaco entered into an Assignment and Assumption Agreement (the "Assignment Agreement") with Defendants, which assigned and transferred over

to Defendant Greba Corporation ("Greba") all of Defendant Sadwick's rights, title, and interest in and to the Franchise Agreement. However, Defendant Sadwick remained responsible for and guaranteed the performance of Greba's performance of all of the obligations, commitments, duties, and liabilities under the Franchise Agreement.

3.      Under the Franchise Agreement and Assignment Agreement, Defendants acquired the right to use the Maaco Maaco's federally-registered trade name, logo, and other proprietary marks (the "Marks") and received from Maaco proprietary information and know-how concerning, among other things, training manuals, policy manuals, operations manuals, sales promotion aids, promotional techniques, business forms, accounting procedures, marketing reports, informational bulletins, product development, suppliers' discounts, and inventory systems.

4.      Plaintiff has alleged that during the term of the Franchise Agreement, Defendants breached their obligations and promises under, among other things, Articles 5, 7, and 18 of the Franchise Agreement by ceasing to operate a Maaco franchise at the Franchise Location, failing to pay Maaco all of the required royalties and advertising fees, and operating a competing business at the Franchise Location.

5.      Despite receiving notice, Defendants failed to cure their defaults under the Franchise Agreement. Accordingly, on December 24, 2019, Maaco sent Defendants a Notice of Termination informing them that their license for operating a Maaco franchise at the premises Franchise Location was terminated effective immediately.

6.      In the Franchise Agreement, Defendants agreed, among other restrictive covenants, that for a period of one (1) year following the termination  or expiration of the Franchise Agreement or the date of compliance, whichever occurs later, they would not "directly or indirectly, for [themselves], or through, on behalf of, or in conjunction with any person, persons,

or legal entity . . . [o]wn, maintain, engage in, be employed by, finance or make loans to, advise, assist, or have any interest in or relationship or association with any business providing, in whole or in part, motor vehicle painting or body repair services at the premises of the [Franchise Location] or within a radius of ten (10) miles of the [Franchise Location] or of any other Maaco Center or MAACO location that was in existence at the time [Defendants] signed [the] Franchise Agreement."

7.      Defendants further agreed, pursuant to the Franchise Agreement, that upon termination of the Franchise Agreement, Defendants would "not directly or indirectly at any time or in any manner identify [themselves] or any business as a current or former Maaco Center or as otherwise associated with MAACO, or use in any manner or for any purpose the Proprietary Marks or any colorable imitation thereof."

8.      Finally, Defendants agreed "that as between MAACO and [Defendants], MAACO has the sole rights to and interest in all telephone number and directory listings associated with any name or mark and, where applicable, authorizes MAACO to direct the telephone company and all listing agencies to transfer same to MAACO or its affiliate should [Defendants] fail to do so . . . ." Indeed, upon termination or expiration of the Franchise Agreement, Defendants agreed to "notify the telephone company and all listing agencies of the termination or expiration of [Defendants'] right to use all telephone numbers and all classified and other directory listings of the Center and, where applicable, to authorize same to transfer to MAACO or its affiliate all such numbers and directory listings."

9.      Notwithstanding Defendants' alleged breach, Defendants continue to operate a business at the premises of the Franchise Location which Plaintiff has demonstrated constitutes a competing business providing, in whole or in part, motor vehicle painting or body repair services

or products. In the operation of their independent competing business, Defendants continue to utilize the telephone number ending -4880 that has been advertised exclusively in conjunction with Maaco's Marks.

10.     Maaco has initiated this action asserting claims for breach of contract and trademark infringement seeking to recover, among other things, the franchise fees, royalties, and advertising contributions owed by Defendants under the Franchise Agreement and seeking a preliminary injunction enforcing Defendants' covenants under the Franchise Agreement and enjoining Defendants from further using any Maaco marks and the telephone number ending -4880 that has been advertised exclusively in conjunction with Maaco's Marks.

11.     On March 6, 2020, Maaco filed the instant Motion, to which Defendants have not opposed, and the Motion is ripe for review.

## Conclusions of Law

1.     To obtain a preliminary injunction, Maaco must establish: "'(1) that [it] is likely to succeed on the merits, (2) that [it] is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in [Maaco's] favor, and (4) that an injunction is in the public interest.'" *The Real Truth About Obama v. Federal Election Commission*, 575 F.3d 342, 346 (4th Cir. 2009) (*quoting Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 24 (2008)), *vacated by* 559 U.S. 1089 (2010), <u>*reinstated in relevant part by*</u> 607 F.3d 355 (4th Cir. 2010)."

2.     The Court concludes that it has jurisdiction over the parties and subject matter to this action.

3.     The Court concludes that Maaco has shown a likelihood of success on the merits of its claims for breach of the Franchise Agreement and Assignment Agreement and for trademark

infringement. Specifically, the Court concludes that Maaco has shown a likelihood of success demonstrating that Defendants have failed to satisfy their monetary obligations due and owing under the Franchise Agreement and Assignment Agreement, that Defendants are continuing to operate an independent competing business providing, in whole or in part, motor vehicle painting or body repair services at the premises of the Franchise Location in violation of the non-competition provisions of the Franchise Agreement, and that Defendants are continuing to use the telephone number ending -4880 that has been advertised exclusively in conjunction with Maaco's Marks.

4.      In addition, the Court concludes that the scope of the non-competition provisions of the Franchise Agreement is reasonable and necessary to protect Maaco's legitimate business interests.

5.      Although Defendants have alleged competing claims against Maaco, the Court finds that Defendants' allegations and claims are unlikely to defeat Maaco's claims for breach of the Franchise Agreement and Assignment Agreement such that Defendants' allegations do not overcome Maaco's showing of a likelihood of success on the merits of its claims.

6.      The Court further concludes that Maaco has shown it is likely to suffer irreparable harm absent entry of an injunction enforcing the non-competition provisions of the Franchise Agreement and enjoining further use of Maaco's Marks and the telephone number ending -4880 that has been advertised exclusively in conjunction with Maaco's Marks.

7.      In the wake of a franchisee's breach of the Franchise Agreement and cessation of operation as a Maaco center, one of Maaco's top priorities is to re-establish an authorized Maaco Center in order to retain its goodwill and market share in the market that was formerly served by Defendants.

8.      Permitting Defendants to violate the covenant not to compete and to use the Maaco know-how and training to establish their own automotive repair center in the same location would be both grossly unfair and extremely injurious to Maaco.  It would deprive Maaco of the customers and the market that it has established over the course of its franchise relationship with Defendants and would thus make it difficult if not impossible for Maaco to re-establish an authorized, reputable Maaco franchise in the same area.

9.      Moreover, permitting Defendants to ignore and violate their contractually agreed upon covenant not to compete would "adversely affect the value of legitimate, law abiding Maaco franchisees, thus harming the Maaco system as a whole." *Maaco Franchising, LLC v. Boensch*, 2016 U.S. Dist. LEXIS 123203, *32 (W.D.N.C. Sept. 12, 2016).  If Defendants are allowed to operate a competing Center at the same location or within the covenanted geographical area and to continue to use the knowledge, training, and confidential and proprietary information that they gained from Maaco, they would unfairly achieve a significant competitive advantage over all of the legitimate Maaco centers in this area, without having to pay for the privilege of using Maaco's confidential and proprietary know-how.

10.      Further, if Defendants are allowed to violate the covenant not to compete contained in their Franchise Agreement, other franchisees will be tempted to leave the franchise system after they have been afforded the opportunity to gain the benefit of the knowledge and training provided by the system. *See e.g.*, *Jiffy Lube Int'l., Inc. v. Weiss Bros., Inc.*, 834 F. Supp. 683, 693 (D.N.J. 1993) (granting the plaintiffs' motion for a preliminary injunction in part based on not wanting to send the message that other franchisees could get away with violations of their franchise agreements).  This is made much more likely if franchisees believe they can do so with impunity, believing the courts will not hold them to their contractually agreed covenant not to compete.

11.     Finally, if Defendants are permitted to continue using the telephone number ending -4880 that has been advertised exclusively in conjunction with Maaco's Marks, customers may be deceived into identifying the products and services offered by Defendants as Maaco's products and services. *Meineke Car Care Ctrs., LLC v. ASAR, Inc.*, 2014 U.S. Dist. LEXIS 112106, *9, n. 3 (W.D.N.C. Aug. 13, 2014) ("Where a former franchisee continues to use telephone numbers it used as franchisee and agreed to relinquish or transfer upon termination, the franchisee is not only in breach of the franchise contract but also poses a serious threat of irreparable injury." (citations omitted)).

12.     As a result of the above, the Court concludes that Maaco has demonstrated that it will likely suffer irreparable harm absent the requested injunctive relief.

13.     With respect to the balance of equities and the potential harm to the parties, the Court concludes that the harm to Plaintiff outweighs the potential harm to Defendants.

14.     As an initial matter, any harm resulting to Defendants from the requested injunction would be entirely self-inflicted, as Plaintiffs have demonstrated that Defendants failed to perform their obligations under the Franchise Agreement and Assignment Agreement resulting in the alleged breach and in this action being commenced.

15.     Moreover, Defendants specifically agreed to the covenant at the very outset of their franchise relationship with Maaco. It would be unjust to permit Defendants to violate their covenant because it would permit them to benefit unfairly from the confidential marketing and operational information that Maaco previously provided to them as part of the parties' franchise relationship. *Boensch*, 2016 U.S. Dist. LEXIS 123203 at *33-34.

16.     Although Defendants may suffer harm as a result of the requested injunction, Defendants' alleged harm is limited because the "covenant against competition only prohibits

Defendants from selling a limited and specific set of products and services within the covenanted area and term." *Id.* at *34.  Indeed, Defendants may pursue their chosen business "in a substantial geographic area after the expiration of the relevant term." *Id.*  Moreover, "Defendants specifically acknowledged and agreed that such covenant was reasonable when they signed the Franchise Agreement." *Id.*

17.     Accordingly, the significant harm that would result to Plaintiff and its authorized franchisees if Defendants were allowed to violate this covenant and continue infringing upon Maaco's Marks outweighs any harm to Defendants from the requested injunction, and the Court concludes that the balance of equities tip in favor of Plaintiff.

18.     Finally, the Court concludes that the entry of the requested injunction serves the public interest.

19.     The public derives substantial benefit from the services provided by those who, like Plaintiff, train entrepreneurs and develop new businesses. Communities benefit from the variety, competition, and quality of products and services made available to them through the efforts of franchisors such as Plaintiff. Franchisees are provided with professional training, skills and the promotional advantages of a recognized trade name, which enable them to establish their own businesses at a fraction of the cost of beginning from scratch. If franchisors such as Maaco are unable to protect themselves and their systems from those who would take unfair advantage of the benefits of exposure to a franchised system, Maaco and other franchisors may be forced to alter their way of doing business, to the detriment of the consuming public.

20.     In addition, if individuals can enter into contracts and disregard the terms they do not like with impunity, then the sanctity of the contractual relationship will be severely undermined. *Boensch*, 2016 U.S. Dist. LEXIS 123203 at *35 ("there is a strong public interest in

honoring the sanctity of a contractual relationship"). The enforcement of Maaco's contractual covenant sanctifies and continues to support the fundamental contractual arrangement between the parties.

### Conclusion

21.     Accordingly, the Court concludes that Maaco has satisfied the four factors for obtaining a preliminary injunction and this Court, in its discretion and pursuant to Rule 65 of the Federal Rules of Civil Procedure, hereby GRANTS the Motion.

WHEREFORE, IT IS, THEREFORE, ORDERED that Defendants, their agents, servants, employees, and attorneys, and all persons in active concert or participation with them who receive actual notice of this Order, by personal service or otherwise, are:

A.  IMMEDIATELY ENJOINED AND PROHIBITED from:

1.     Owning, maintaining, engaging in, being employed by, financing or making loans to, advising, assisting, or having any interest in or relationship or association with any business providing, in whole or in part, motor vehicle painting or body repair services or products at the premises of the Franchise Location or within a radius of ten (10) miles of the Franchise Location or within a ten (10) mile radius of any existing MAACO location that was in existence at the time that Defendants signed the Franchise Agreement during the pendency of this litigation or for one (1) year from Defendants' date of compliance with the terms of the Franchise Agreement, whichever is later;

2.     Any further use of Maaco's trade name, logo, marks, advertising, telephone listing, specifically including the telephone number ending -4880, forms, manuals, products, computer software, merchandise, and all other things and materials of any kind which are identified or associated in the mind of the consuming public with Maaco;

3.     Diverting or attempting to divert any business or customer of Maaco to any competitor, by direct or indirect inducement; and

4.     Doing or performing, directly or indirectly, any other act injurious or prejudicial to the goodwill associated with Maaco's trade name, logo, marks, or any other thing or material of any kind which are identified or associated in the mind of the consuming public with Maaco.

B.     DIRECTED AND ORDERED TO IMMEDIATELY:

1.     Release or transfer to Maaco the telephone number ending -4880 that has been advertised in connection with Maaco by doing everything required by the telephone company, including the signing of any release forms or payment of any outstanding telephone bills, to release or transfer the telephone numbers to Maaco; and

2.     Cease using and/or remove and/or have removed any names, marks, signs, forms, advertising, manuals, computer software, supplies, products, merchandise, and all other things and materials of any kind which are identified or associated with the Maaco name, logo, marks, or trade dress, or which contain a name, logo, mark, or trade dress confusingly similar to the Maaco name, logo, marks, or trade dress.

Signed: May 7, 2020

Graham C. Mullen
United States District Judge