IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:20-CV-147

| | |
|---|---|
| MAACO FRANCHISOR SPV, LLC, )<br>)<br>Plaintiff, )<br>v. )<br>)<br>GREGG A. SADWICK and GREBA )<br>CORPORATION, )<br>)<br>Defendants. )<br>)<br>)<br>) | **ORDER** |

This matter is before the Court upon Plaintiff's Motion to Dismiss First Amended Counterclaim. The motion has been fully briefed and is ripe for disposition.

## I.    FACTUAL BACKGROUND

Plaintiff Maaco Franchisor SPV, LLC ("Maaco") is a franchisor operating and granting franchises for automotive repair centers throughout North America offering motor vehicle painting or body repair services and products. In July of 2016, Defendant Gregg A. Sadwick ("Sadwick") entered into a Franchise Agreement[1] to operate an authorized Maaco franchise in Rochester, New York.[2] On December 24, 2019, Maaco sent Defendants a Notice of Termination informing them that their license for operating their Maaco franchise was terminated. On March 6, 2020, Maaco filed this lawsuit alleging claims for breach of contract and trademark

---

[1] The Franchise Agreement is attached as Exhibit 1 to Plaintiff's Complaint.

[2] In April of 2017, Maaco entered into an Assignment and Assumption Agreement with Defendants, which assigned and transferred over to Defendant Greba Corporation all of Defendant Sadwick's rights, title, and interest in and to the Franchise Agreement. However, Defendant Sadwick remained responsible for and guaranteed the performance of Greba's performance of all the obligations, commitments, duties, and liabilities under the Franchise Agreement.

1

infringement, along with a Motion for Preliminary Injunction, alleging that Defendants had violated their post-termination restrictive covenants. The Court granted Plaintiff's Motion for Preliminary Injunction.[3] Defendants subsequently answered the Complaint and filed their Amended Counterclaim.

Defendant's Counterclaim contains one claim for relief alleging breach of contract and breach of the implied covenant of good faith and fair dealing. (Doc. No. 27). Specifically, Defendants allege that beginning in early 2019, Maaco implemented a policy whereby it held back thirty percent of the Franchisees' weekly advertising contributions and redirected them to a program called "Project Restore," which focused on funding store maintenance, capital improvements, and equipment purchases. Around the same time, Maaco also redirected funds from the weekly advertising contributions to a "pay-per-click" marketing methodology. Defendants assert that these actions by Maaco were in breach of the Franchise Agreement. Plaintiff now seeks to dismiss Defendants' Counterclaim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

**II.     DISCUSSION**

To survive a Rule 12(b)(6) motion, a complaint must state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Facial plausibility exists only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In assessing a complaint for plausibility, the court "must take all of the factual allegations in the complaint as true" but need not "accept as true . . . legal conclusion[s] couched as factual allegation[s]." *Id.* (quoting *Twombly*, 550 U.S. at 555).

---

[3] Defendants thereafter filed a Motion for Reconsideration which the Court denied.

2

The elements of a breach of contract are "the existence of a valid contract" and a "breach of the terms of that contract." *Parker v. Glosson*, 641 S.E.2d 735, 737 (N.C. Ct. App. 2007). Indeed, to survive a motion to dismiss, Defendants are required to allege "the facts constituting the breach" of contract and "the specific provisions breached." *Thompson v. Bass*, 819 S.E.2d 621, 625-26 (N.C. Ct. App. 2018).

"Under North Carolina law, interpretation of a written and unambiguous contract is a question of law for the court." *Prichard Enters. v. Adkins*, 858 F. Supp. 2d 576, 586 (E.D.N.C. 2012). When the terms of a contract are ambiguous, interpretation of the contract is a matter for the jury. *Harper v. Vohra Wound Physicians of NY, PLLC*, 841 S.E.2d 580, 584 (N.C. Ct. App. 2020).

Section 6.1 of the Franchise Agreement is labeled "**ADVERTISING**" and provides, in pertinent part, as follows:

> B. Franchisee shall pay MAACO a continuing weekly advertising contribution in the amount of Eight Hundred Fifty Dollars ($850.00), or an amount equal to the weekly advertising budget of Franchisees operating in Franchisee's designated market area, whichever is greater, *for the creation and placement of advertising and promotional programs by MAACO for the benefit of the System, including website development, telemarketing and Maaco Center locator numbers.* Notwithstanding anything stated to the contrary, during the first six (6) months that Franchisee opens its new Center the amounts that Franchisee contributes as stated above may be spent on local marketing for Franchisee's Center or for the local market as determined by MAACO within its sole discretion. . . . Franchisee hereby acknowledges MAACO's right to pay from advertising funds collected all costs and expenses related to the formulation, development, production, media and all other costs of such advertising and promotion (including without limitation, the proportionate compensation of employees of MAACO who devote time and render services in the conduct, formulation, development and production of such advertising and promotion programs or the administration of the funds used therefore.) . . .
>
> MAACO will spend all advertising contributions hereunder for advertising and promotion as herein described, provided that it shall not be obligated to spend such contributions in the year in which paid by Franchisee. *Franchisee acknowledges and understands that advertising and promotion conducted by MAACO is intended*

3

> *to maximize general public recognition and patronage of the System in the manner determined to be most effective by MAACO* and that MAACO undertakes no obligation in developing, implementing or administering such programs to ensure that expenditures which are proportionate or equivalent to Franchisee's contributions are made for the Center or that any center will benefit directly or pro rata from the placement of advertising. …
>
> . . .
>
> D. Franchisee shall pay MAACO . . . a continuing weekly digital marketing fee in the amount of seventy dollars ($70.00) or an amount equal to the then current digital marketing fee being charged by MAACO to be used for digital marketing efforts and future forms of electronic marketing or promotional tools or programs, including pay-per-click advertising and directory listing maintenance.

(Doc. No. 1-1, pp. 10-11) (emphasis added).

Section 7 of the Franchise Agreement is labeled "**Duties of Franchisee**" and provides in pertinent part:

> E. Franchisee shall maintain the Center in the highest degree of sanitation, repair and condition, and shall perform such periodic repainting, repairs to impaired equipment and replacement of obsolete signs as MAACO may reasonably direct. At MAACO's request, which shall not be more often than once every five (5) years . . . , Franchisee shall refurbish the Center to conform to MAACO's then current public image, and shall remodel, redecorate and make such modifications to existing improvements as may be necessary. Franchisee shall purchase any additional equipment and replace any obsolete equipment as MAACO may from time to time direct at Franchisee's expense.

(*Id*. at p. 14).

The substance of Defendants' allegations is that Maaco breached the Franchise Agreement by misdirecting franchisees' weekly advertising contributions to fund store maintenance, capital improvements, and equipment purchases, which are the explicit responsibility of the franchisees under Section 7. Moreover, Defendants allege that Maaco also misdirected advertising contributions to digital marketing, for which a separate weekly contribution was required per Section 6.1D. Defendants allege that as a result of Maaco's

4

misdirection of advertising contributions in this manner, their franchise store suffered a significate loss in business volume and revenues.

Plaintiff Maaco argues that Defendants fail to plausibly plead a breach of contract because Maaco had the sole discretion to use the advertising contributions "in the manner determined to be most effective by MAACO." *See* Doc. No. 1-1, p. 11. Under Project Restore, instead of requiring its franchisees to make improvements to their franchise location with separate out-of-pocket funds, Maaco asserts that it had the discretion under the Franchise Agreement, as part of its advertising and marketing strategy, to use a portion of the advertising funds to refurbish and update its franchise locations. Moreover, Maaco contends that the Franchise Agreement does not limit the amount Maaco may spend on its digital marketing efforts, including pay-per-click advertising.

Defendants correctly point out that Section 6.1(B) provides that Maaco only has "sole discretion" to spend advertising contributions in the local market for the first six months after the franchisee opens. Otherwise, the advertising and promotion conducted by MAACO is "for the creation and placement of advertising and promotional programs by MAACO for the benefit of the System, including website development, telemarketing and Maaco Center locator numbers," and Maaco may pay from the advertising contributions "all costs and expenses related to the formulation, development, production, media and all other costs of such advertising and promotion." Maaco may use the advertising contributions "to maximize general public recognition and patronage of the System in the manner determined to be most effective by MAACO."

Improvement of franchise locations is addressed in Section 7 of the Franchise Agreement and is described under "Duties of Franchisee." Moreover, digital marketing efforts are described

5

in a separate subsection that is associated with a separate weekly digital marketing fee. The Court finds that the Franchise Agreement may be ambiguous as to the issue of whether Maaco can redirect advertising contributions as alleged by Defendants. Accordingly, Defendants have stated a plausible claim of breach of contract.

Under North Carolina law, every contract contains "an implied covenant of good faith and fair dealing that neither party will do anything which injures the right of the other to receive the benefits of the agreement." *Bicycle Transit Auth. v. Bell*, 333 S.E.2d 299, 305 (N.C. 1985) (citation omitted). As a general proposition, where a party's claim for breach of the implied covenant of good faith and fair dealing is based upon the same acts as its claim for breach of contract, the court treats the former claim as "part and parcel" of the latter. *Cordaro v. Harrington Bank, FSB*, 817 S.E.2d 247, 256 (N.C. Ct. App. 2018), *review denied*, 821 S.E.2d 181 (N.C. 2018). "In other words, if a plaintiff brings a breach of contract claim and a claim for breach of the covenant of good faith and fair dealing based on the same facts, the two causes of action are treated as one and the same." *Eye Dialogue LLC v. Party Reflections, Inc.*, No. 20-CVS-5104, 2020 WL 4334810, at *8 (N.C. Super. July 28, 2020). Accordingly, as the Court has determined that Defendant's breach of contract claim should not be dismissed, their claim for breach of the implied covenant of good faith and fair dealing should likewise withstand dismissal at this stage.

IT IS THEREFORE ORDERED that Plaintiff's Motion to Dismiss First Amended Counterclaim is hereby DENIED.

Signed: August 4, 2020

Graham C. Mullen
United States District Judge